## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE SPINE AND SPORTS HEALTH CENTER AND RON BEN-MEIR, D.O., | : Civil Action No. Civil Action No. |
| *Plaintiffs*, | : **VERIFIED COMPLAINT AND JURY DEMAND** |
| v. | : |
| ALEXANDRU BURDUCEA, D.O. AND JOHN DOES 1-5, | : |
| *Defendant*. | : |

Plaintiffs, The Spine & Sports Health Center ("SSHC"), principally located at 123 Tidewater Street, Jersey City, New Jersey, 07302, and Ron Ben-Meir, D.O. ("Dr. Ben-Meir), a New Jersey resident  (collectively "Plaintiffs"), by and through their attorneys, Brach Eichler L.L.C., by way of Verified Complaint against Defendants, Alexandru Burducea, D.O.,  a resident of 300 Arleigh Rd., Douglaston, NY 11363 ("Dr. Burducea") and/or John Does 1-5 (collectively, the "Defendants") says:

### NATURE OF THE ACTION

1.      Dr. Ben-Meir, a pain management physician, is having his professional reputation severely attacked by false negative internet reviews purportedly posted by his patients but which are in fact being posted anonymously or under various pseudonyms by his direct competitor, Dr. Burducea, an anesthesiologist and pain management physician, to gain an unfair competitive advantage and/or as revenge against Dr. Ben-Meir.

2.      Dr. Burducea, who is currently under federal indictment for charges of bribery, kickbacks and conspiracy with a pharmaceutical company, likely blames Dr. Ben-Meir for discussing his indictment with their colleagues at the Pleasantdale Surgical Center ("Pleasantdale") in West Orange, New Jersey and causing the termination of his employment

with the anesthesia group providing services for Pleasantdale.

3.      Dr. Burducea, either alone or in concert with John Does 1-5, has posted at least sixteen false internet reviews over a two week period from late September 2018 through early October 2018 on popular review websites including Google, Healthgrades.com and Vitals.com.

4.      This onslaught of false reviews against Dr. Ben-Meir include charges of incompetence and sexual misconduct. Dr. Burducea has also been posting similarly worded false reviews about another pain management physician, his former employer, on these same websites.

5.      These defamatory and fraudulent reviews, if not immediately taken down from these websites, will have a devastating and irreparable effect on Dr. Ben-Meir's and SSHC's reputation and medical practice.

## JURISDICTION AND VENUE

6.      This is an action in law and equity for trademark infringement and false designation of origin, seeking injunctive relief, punitive damages and attorney's fees for Defendants' unfair competition under §43(a) of the Lanham Act, 15 U.S.C. 1125(a); treble damages for Defendants' unfair competition under N.J.S.A. 56:4-1 et. seq.; Defendants' unfair competition and deceptive trade practices under the common law of the State of New Jersey; tortious interference with contract; interference with contractual relationship; intentional interference with prospective economic advantage; negligent interference with prospective economic advantage; and Declaratory Judgment pursuant to 28 U.S.C. § 2201.

7.      Upon information and belief, the Defendants actions are part of a deliberate attempt to confuse purchasers of Plaintiffs' services and to divert sales away from Plaintiffs.

8.      This Court has jurisdiction over the subject matter of the within and foregoing action pursuant to the provisions of 28 U.S.C. §§ 1331 and 1338 and provisions of 15 U.S.C. § 1121.

9.      This Court has jurisdiction over the subject matter of the within and foregoing action

also by reason of 28 U.S.C. § 1332 in that the controversy is between citizens of different states and exceeds the sum of $75,000.00 exclusive of interest and costs.

10.     Plaintiffs are citizens of the State of New Jersey.

11.     Defendants include at least one citizen of the State of New York.

12.     The Court has supplemental jurisdiction over the State law and common law claims.

13.     This Court has personal jurisdiction over the Defendants in New Jersey, by virtue of the fact that the Defendants regularly conducts and solicits business in the State of New Jersey and has committed tortious acts within the state by committing acts of infringement and unfair competition in this state.

14.     Venue is proper in this district pursuant to the provisions of 28 U.S.C. § 1391(a)(2), (b) and (c) and 28 U.S.C. § 1400 (a) and (b). Venue in this District is proper because a substantial part of the events giving rise to this claim occurred in this district. Although the true identity of each Defendant is unknown to Plaintiffs at this time, on information and belief, each Defendant may be found in this District and/or a substantial part of the acts of infringement complained of herein occurred in this District. On information and belief, personal jurisdiction in this District is proper because each Defendant, disseminated over the Internet content injurious to the Plaintiff which resulted in the loss of business. Such illegal dissemination occurred in every jurisdiction in the United States, including this one. In addition, each Defendant contracted with an Internet Service Provider found in New Jersey to provide each Defendant with the access to the Internet which facilitated Defendants' unlawful activities.

## PARTIES

15.     Plaintiff SSHC is located throughout Northern New Jersey and more particularly in Jersey City, Hoboken and Bayonne, providing high quality pain management, sports medicine, physical therapy and rehabilitation, chiropractic and acupuncture services to these communities for over ten years. Plaintiff Dr. Ben-Meir is a physician Board Certified in Physical Medicine

- 2 -

and Rehabilitation, specializing in interventional pain management.

16.     Defendant Dr. Burducea, a New York resident, is an anesthesiologist and pain management physician who has worked in New York City and Northern New Jersey, providing similar services as Dr. Ben-Meir.

17.     The true names and capacities of the Defendants are unknown to Plaintiffs at this time.  Each Defendant is known to Plaintiffs only by the Internet Protocol ("IP") address assigned to that Defendant by his or her ISP on the date and time at which the unlawful activity of each Defendant was observed.  Plaintiffs believe that information obtained in discovery will lead to the identification of each Defendant's true name.

## FACTUAL ALLEGATIONS

### A.     The Federal Charges Against Burducea

18.     On March 16, 2018, the United States Attorney for the Southern District of New York publicly announced the unsealing of an indictment against five physicians, including Dr. Burducea.  Dr. Burducea and the other physicians were charged with, among other offenses, participating in a scheme to receive bribes and kickbacks in the form of fees for sham speaker programs from the pharmaceutical company Insys Therapeutics in exchange for prescribing millions of dollars' worth of the powerful and addictive painkiller Subsys, a fentanyl-based spray.

19.     According to the indictment, Dr. Burducea received $68,400 in speaker program fees in exchange for prescribing large volumes of the fentanyl spray.

20.     According to the indictment, by the end of the second quarter of 2015, Dr. Burducea was approximately the 14th-highest prescriber of the fentanyl spray nationally.

21.     Dr. Burducea was released on bail and has a trial date scheduled for November 2019.

22.    Dr. Burducea was performing per diem anesthesia work in New Jersey since his indictment.

23.    Dr. Burducea resisted any limitation on his prescribing ability as a condition of his bail out of concern that he would be unemployable.

24.    Nevertheless, a federal judge ordered that Dr. Burducea could not prescribe drugs like the fentanyl spray while his case is pending, and must also have a second physician sign off on prescription for controlled substances for off-label use.

25.    A Pretrial Conference with the federal judge was held on September 20, 2018 and a trial date was scheduled for November 4, 2019.

**B.    Defendant's History with Dr. Ben-Meir and Dr. Jose Colon**

26.    Dr. Ben-Meir and Dr. Burducea first met during their residency training in 2011 at Mt. Sinai Hospital in New York City.

27.    During their residency, Dr. Ben-Meir and Dr. Burducea both worked in a pain management medical office at Mount Sinai Hospital in 2011 and 2012.

28.    Dr. Burducea thereafter became employed by Dr. Jose Colon who owned an anesthesiology and pain management practice in New York City.

29.    Dr. Burducea was also employed by an anesthesia group that provides anesthesia services to many surgery centers in Northern New Jersey.

30.    In or about March 2018, Dr. Burducea's employment with Dr. Colon's practice was terminated due to the indictment.

31.    In or about March 2018, Dr. Ben-Meir, who had operating privileges at Pleasantdale Surgery Center ("Pleasantdale") in West Orange, New Jersey, observed Dr. Burducea on one occasion providing anesthesia services at Pleasantdale.

32.    Many individuals working at Pleasantdale, including Dr. Ben-Meir, discussed Dr.

- 4 -

Burducea's indictment following the U.S. Attorney's March 16, 2018 public announcement of its unsealing.

33.    Previously unaware of Dr. Burducea's indictment, the anesthesia group terminated Dr. Burducea's employment upon learning of the criminal charges.

34.    Upon information and belief, Dr. Burducea blames Dr. Ben-Meir for alerting his anesthesia group employer about his indictment, resulting in his termination.

35.    Dr. Ben-Meir has not seen Dr. Burducea since March 2018.

## C.    The Negative Online Reviews

36.    Upon information and belief, since the March 2018 public announcement of his indictment and resulting employment terminations, Dr. Burducea has been working per diem providing anesthesia and/or pain management services in Northern New Jersey and New York City.

37.    Dr. Burducea is directly competing with Dr. Ben-Meir and SSHC in Northern New Jersey.

38.    At the end of September 2018, SSHC noticed an increasing number of negative online patient reviews about Dr. Ben-Meir in just a week's time. This was highly unusual for Dr. Ben-Meir who typically receives highly positive reviews.

39.    Through early October 2018, the negative online reviews about Dr. Ben-Meir mounted, with multiple complaints being posted even on the same day.

40.    During those two weeks from September 26, 2018 through October 8, 2018, at least sixteen defamatory negative reviews purportedly from patients of Dr. Ben-Meir were posted on Google, Healthgrades.com and Vitals.com about Dr. Ben-Meir.

41.    Around this same time, Dr. Colon, Dr. Burducea's former employer, was also the target of numerous bitterly negative and false internet patient reviews.  Dr. Colon had noticed

- 5 -

that similarly worded and styled reviews with some of the same patient names were being posted online about Dr. Ben-Meir and therefore Dr. Colon contacted SSHC.

42.    During conversations with Dr. Visco, Dr. Ben-Meir and their staff with Dr. Colon and Judy Colon, his wife and his office manager, they discovered the mutual connection that Dr. Ben-Meir and Dr. Colon have with Dr. Burducea.

43.    Dr. Ben-Meir and Dr. Colon did not know each other before these conversation, nor did they have any other common connection other than Dr. Burducea.

44.    Dr. Ben-Meir, Dr. Visco and Dr. Colon all agreed, after comparing all of the negative reviews, that Dr. Burducea was likely the person writing and/or posting the reviews.

45.    Dr. Burducea had clear motivation to seek to smear the destroy the professional reputation of Dr. Ben-Meir who he likely blamed for his termination from the anesthesia group that provided services at Pleasantdale and with whom he competes for pain management work in Northern New Jersey.

46.    Dr. Burducea, whose employment has been limited to per diem work since his indictment, also has a clear motivation to destroy the professional reputation of Dr. Ben-Meir with whom he competes for pain management patients in Northern New Jersey.

47.    Dr. Burducea also had clear motivation to destroy the professional reputation of his former employer Dr. Colon who fired him after his indictment.

48.    Upon carefully studying the negative reviews of Dr. Ben-Meir and researching patient medical records in order to verify any of the statements, SSHC has debunked each and every review as fictitious and fraudulent.

49.    Upon information and belief, Dr. Burducea is posting, individually or in concert with John Does 1-5, the defamatory, false and fraudulent negative reviews of Dr. Ben-Meir to gain an unfair competitive advantage in providing pain management services in Northern New Jersey.

- 6 -

50.     Upon information and belief, Dr. Burducea is posting the defamatory, false and fraudulent negative reviews against Dr. Ben-Meir as revenge for disclosing or discussing Dr. Burducea's indictment with colleagues at Pleasantdale, resulting in Dr. Burducea's employment termination with Dr. Colon.

51.     The posting of the negative internet reviews began on September 26, 2018, just six days after the federal court pretrial hearing at which his criminal trial was scheduled for November 4, 2019.

### 1.   The "John Smith" Healthgrades Review

52.     A review posted by "John Smith" on Healthgrades.com about Dr. Ben-Meir on or about September 26, 2018 (the "John Smith Healthgrades Review") states:

> I saw this doctor twice and both times he was in a rush. Did not explain anything to me. He was in his cell phone nonstop. He wanted to inject my back and I do not trust him. I hear the [sic] paralyzed a patient a couple of years ago. Do not go to see him.

A copy of the John Smith Healthgrades Review is attached as **Exhibit A.**

53.     According to a search and review of the SSHC electronic medical records ("EMR") by Connie Abraczinskas ("Ms. Abraczinskas"), SSHC's Director of Operations, a "John Smith" is not currently a patient of Dr. Meir's, but of another physician in the practice.  Dr. Ben-Meir only treated that "John Smith" once, not twice.

54.     Furthermore, according to the search and review of the EMR, in the past year, Dr. Ben-Meir was never accused of paralyzing a patient.  If he had been so accused, Dr. Ben-Meir would have been obligated to report the claim to his malpractice insurance carrier, Princeton Insurance Group, but no such report was made. Dr. Ben-Meir also would have had to disclose such a claim upon the renewal of his malpractice insurance policy, which was renewed on July 9, 2018.  There were no incidents involving paralysis of a patient prior to or since July 9, 2018.  Dr. Ben-Meir would also be obligated to report such an incident to the New Jersey Board of Medical

- 7 -

Examiner ("BME").  No such statements were made on Dr. Ben-Meir's prior reporting on May

15, 2017 and no such statement will be made on his upcoming reporting on or about June 30,

2019.

### 2.   The "Jennifer Jackson" Google Review

55.   Another review posted by "Jennifer Jackson" on Google about Dr. Ben-Meir on or

about September 27, 2018 (the "Jennifer Jackson Google Review") states:

> Dr. Ben-Meir did 1 injection and I will not go back for the 2nd.  I had
> horrible pain for weeks and could not walk well at all. I called the
> office to talk to him and he did not call me back in 1 week.  I felt
> very u [sic] safe under his care. This practice is not good. Dr. Ben-
> Meir is not ethically correct and mistreated me. I am an old lady in
> pain. I should not have suffered this way . I would NOT
> recommend him to anyone !!!

A copy of the Jennifer Jackson Google Review is attached as **Exhibit B.**

56.   According to a search and review of SSHC's EMR by Ms. Abraczinskas, "Jennifer

Jackson" is not currently a patient of SSHC and has never been a patient of SSHC.  Furthermore,

if a patient had reported such an infection, the standard operating procedure for SSHC is to

document the complaint in the patient's chart in the EMR and communicate the complaint to the

physician and/or to Dr. Visco. A review of the past six months fails to find any such complaint or

communication.

### 3.   The "J Cortes" Google Review

57.   Another review posted by "J Cortes" on Google about Dr. Ben-Meir also on or about

September 27, 2018 (the "J Cortes Google Review") states:

> My KNEE got INFECTED after he injected it and I had to go the ER. I
> was on antibiotics for 2 weeks. HE NEVER CALLED TO CHECK
> [SIC] ON ME AFTER THE INJECTION. Dr. Ben-Meir had a very
> dirty technique and used non-sterile gloves. I am not going back to
> him. He caused me so much agony and pain after a simple
> injection.

A copy of the J Cortes Google Review is attached as **Exhibit C.**

BE:9972426.2/VIS043-265007

58.    According to a search and review of SSHC's EMR by Ms. Abraczinskas, "J Cortes" is not currently a patient of SSHC and has never been a patient of SSHC.  Furthermore, if a patient had reported such an infection, the standard operating procedure for SSHC is to document the complaint in the patient's chart in the EMR and communicate the complaint to the physician and/or to Dr. Visco.  A review of the past six months fails to find any complaint or communication of such a knee infection.

59.    In addition, the standard operating procedure in the State of New Jersey for hospital emergency rooms is that when a patient is seen in the emergency room, the patient's physician is contacted and consulted regarding the cause of the condition prompting the emergency room visit.  A review of the EMR of the past six months fails to find any contact by an emergency room.

60.    Furthermore, the standard operating procedure at SSHC is that all physicians and professional staff at all times use sterile gloves and sterile techniques in compliance with New Jersey health department rules and regulations and in preparation for health department inspections.

61.    Significantly, a "J Cortes" also posted a negative review on Google for Dr. Colon on or about October 4, 2018 (the "J Cortes Dr. Colon Review").  That post similarly used all capital letters for certain words as were used in the "J Cortes" review of Dr. Ben-Meir.  A copy of the J. Cortes Dr. Colon Review is attached as **Exhibit D**.

### 4.  The "Jack Smith" Google Review

62.    Another review posted by "Jack Smith" on Google about Dr. Ben-Meir on or about September 27, 2018 (the "Jack Smith Google Review") states:

> Dr. Ben-Meir has bad manners. Did not explain the mri
> results to me and spent 3 minutes with me. I am not going back.
> Terrible care  He was in his cell phone nonstop.

BE:9972426.2/VIS043-265007

A copy of the Jack Smith Google Review is attached as **Exhibit E**.

63. Notably, the Jack Smith Google Review includes the identical sentence, "He was in his cell phone nonstop.", as was used in the John Smith Healthgrades Review.

64. According to a search and review of SSHC's EMR by Ms. Abraczinskas, "Jack Smith" is not currently a patient of Dr. Ben-Meir's but is a patient of another physician at SSHC. Dr. Ben-Meir has never treated a "Jack Smith."

65. Furthermore, the real Jack Smith patient posted a five-star review of SSHC on Google on or about September 20, 2018. The real Jack Smith review is attached as **Exhibit F**. Ms. Abraczinskas contacted the real Jack Smith patient by phone and he verified that the five-star rating was his.

66. Additionally, the statement in the fictional Jack Smith Google Review that Dr. Ben-Meir only spent three minutes with him is verifiably untrue. According to a search and review of SSHC's EMR by Ms. Abraczinskas, all of Dr. Ben-Meir's office visits in the six months prior to the September 27, 2018 review were billed as either a Level II, Level III or Level IV office visit. These are Evaluation and Management codings for billing medical office visits, ranging from lower to higher levels of care. For a Level II office visit, the physician must spend at least ten minutes face-to-face with the patient, or perform expanded problem focused history, expanded problem focused exam, and straightforward medical decision-making. For a Level III office visit, the physician must spend thirty-minutes face-to-face with the patient, or perform a detailed history, detailed exam and low complexity medical decision-making. For a Level IV office visit, if coding based on time, the physician must spend forty-five minutes face-to-face with the patient, or perform a comprehensive history, a comprehensive exam, and moderate complexity medical decision-making. Thus, it is an impossibility that Dr. Ben-Meir would have spent only three minutes with this purported patient.

### 5.    The "Unidentified Person X" Vitals.com Review

67.    Another view posted by an unidentified person on Vitals.com about Dr. Ben-Meir on September, 28, 2018 (the "Unidentified X Vitals Review") states:

> This was not a good experiment. This doctor spent 6-7 minutes with me and billed me so much for nothing. I got a crazy bill from his office for nothing. This was very incorrect of him

A copy of the Unidentified X Vitals Review is attached as **Exhibit G**.

68.    The statement here that Dr. Ben-Meir only spent six-seven minutes with him is verifiably untrue.  According to a search and review of SSHC's EMR by Ms. Abraczinskas, all of Dr. Ben-Meir's office visits in the six months prior to the September 27, 2018 review were billed as either a Level II, Level III or Level IV office visit.  These are Evaluation and Management codings for billing medical office visits, ranging from lower to higher levels of care.  For a Level II office visit, the physician must spend at least ten minutes face-to-face with the patient, or perform expanded problem focused history, expanded problem focused exam, and straightforward medical decision-making.  For a Level III office visit, the physician must spend thirty-minutes face-to-face with the patient, or perform a detailed history, detailed exam and low complexity medical decision-making. For a Level IV office visit, if coding based on time, the physician must spend forty-five minutes face-to-face with the patient, or perform a comprehensive history, a comprehensive exam, and moderate complexity medical decision-making.  Thus, it is an impossibility that Dr. Ben-Meir would have spent only six-seven minutes with this purported patient.

69.    In additional, Dr. Ben-Meir does not determine the costs for patient services and does not bill patients or their insurance providers.

### 6.    The "Unidentified Person Y" Vitals Review

70.    Another review posted by an unidentified person on Vitals.com on September 30,

2018 (the "Unidentified Y Vitals Review") states:

> I had to wait 2 hours for him.  Very disappointing experience. The
> wait was not worth the care he provided

A copy of the Unidentified Y Vitals Review is attached as **Exhibit H.**

71.   It is the policy of SSHC that no patient is kept in the waiting room for extended

periods of time.  Moreover, the waiting rooms in our offices have security cameras, and a review

of the camera recordings show no evidence of any two hour wait in the past several months.

### 7.   The "A Rodriguez" Google Review

72.   Another review posted by "A Rodriguez" on Google about Dr. Ben-Meir on or about

October 1, 2018 (the "A Rodriguez Google Review") states:

> Ben Meir treated me with injections that did not help at all. There was no
> improvement at all and he still kept on insisting to inject more.  My
> sugar got very high and I gained so much weight. My family
> doctor called him and told him to stop injecting me with so much
> steroids.
>
> He treated me like a 'PINCUSHION'
> I would not recommend him to anyone

A copy of the A Rodriguez Google Review is attached as **Exhibit I.**

73.   According to a search and review of SSHC's EMR by Ms. Abraczinskas, there are

fourteen patients of SSHC with first initial "A" and last name "Rodriguez."  None of the clinical

information in the charts of those fourteen patients matches the information in the review.  The

patients either did not receive injections from Dr. Ben-Meir or they were patients of other

physicians at SSHC.

74.   Furthermore, Dr. Ben-Meir generally does not recommend multiple steroid injections,

but if he does, it is Dr. Ben-Meir's policy and practice not to administer more than three steroid

injections in a six month time period.  If a patient requests more than three injections in a six

month time period, Dr. Ben-Meir refers the patient to an orthospine surgeon for further

evaluation.

75.   Dr. Ben-Meir typically uses the steroid Kenalog 40mg for pain injections.

76.   Even if three injections were given over a six months period, the low dose and small

number of injections spread out over six months will not cause weight gain.

77.   In addition, it is also Dr. Ben-Meir's policy to obtain permission from a patient's

primary care physician before administering any injections if a patient presents with any health

problems.  Any follow-up phone calls from a primary care physician would also be documented

in the patient's chart.  According to a search and review of SSHC's EMR by Ms. Abraczinskas,

Dr. Ben-Meir, and Dr. Visco, there were no conversations with a patient's primary care

physician that Dr. Ben-Meir should stop injecting a patient with "so much steroids."

78.   Notably, this negative review, like many of the other negative, makes use of all

capital letters for certain words, showing a consistent writing style.

**8.   The "A Wilson" Google Review**

79.   Another review posted by "A Wilson" on Google about Dr. Ben-Meir on or about

October 1, 2018 (the "A Wilson Google Review") states:

> Dr Ben Meir made me very uncomfortable since he examined me
> in the room WITHOUT a nurse.  This was below a standard of care
> exam. since I am a retired nurse, I can tell HE is not trustworthy.
> He should not examine female patients without a nurse in the
> room.  I am very upset with this bedside manner.

A copy of the A Wilson Google Review is attached as **Exhibit J**.

80.   According to a search and review of SSHC's EMR by Ms. Abraczinskas, there are

two patients with first initial "A" and last name "Wilson. The clinical information in both of

these patients' records do not match the information in the review.  The patients were either not a

patient of Dr. Ben-Meir or the patient was male, debunking the review.

81.   In addition, when a physician at SSHC sees a female patient, it is standard operating

- 13 -

procedure of SSHC to always have a female medical assistant or other female medical

professional in the treatment room for the length of every appointment in order to ensure patient

care and safety as well as a professional environment.

82.     The search and review of the EMR of the past six months indicates that Dr. Ben-Meir

has never had any complaints against him from any female patients.

83.     A review of the SSHC staff by Ms. Abraczinskas confirmed that there was no

instance in the past six months that Dr. Ben-Meir was alone with a female patient in a treatment

room.

### 9.  The "George Storm" Google Review

84.     Another review posted by "George Storm" on Google about Dr. Ben-Meir on or

about October 2, 2018 (the "George Storm Google Review") states:

> Dr Ben Meir staff lost my mri and emg results. They blamed
> me for it. The doctor was rude and very short and unprofessional
> with me. I wasted weeks to go back to the mri facility to get the
> results and saw the doctor again. He was useless.
>     He said he can not help me and he does not treat
> fibromyalgia after I wasted 2 months to see him, he was no help.
> What kind of doctor is this?
>     Disappointing experience

A copy of the George Storm Google Review is attached as **Exhibit K**.

85.     According to a search and review of SSHC's EMR by Ms. Abraczinskas, "George

Storm" is not current a patient of SSHC and has never been a patient of SSHC.

86.     Additionally, there is no record of any lost MRI or EMG results from any patient of

DR. Ben-Meir's nor any complaints.

87.     When a patient brings in an MRI, usually on a CD, the patient is bringing in a copy

provided by the MRI facility.  Sometimes the patient retains the CD and sometimes SSHC will

keep it in the office.  The MRI could never be lost because the MRI provider would be contacted

to provide another copy, which can be done typically within a day or two, not weeks.

BE:9972426.2/VIS043-265007

88.   EMGs are performed in the SSHC office. It is standard operating procedure that a

copy of the report is provided to the patient while the original EMG report is kept in the SSHC

office.

89.   It is the policy of Dr. Ben-Meir to always refer patients to other providers if he feels

that his care is no longer beneficial to the patient. He would never say that "he cannot help" a

patient.

### 10.   The H. Cohen Google Review

90.   Another review posted by "H. Cohen" on Google about Dr. Ben-Meir on or about

October 4, 2018 (the "H. Cohen Google Review") states:

> I suffer with back and knee pain and I was treated by him for a
> whole. I had no results and he wanted to do more and more
> injections which were not helping. He injected so much steroid that
> my family doctor got upset. I gained weight and my sugar was
> high. It was not a good experience. Very pushy doctor

A copy of the H Cohen Google Review is attached as **Exhibit L**.

91.   Notably, this review is very similar to the A Rodriguez Google Review regarding

weight gain and sugar levels due to injections.

92.   According to a search and review of SSHC's EMR by Ms. Abraczinskas, "H Cohen"

is not current a patient of SSHC and has never been a patient of SSHC.

93.   Furthermore, Dr. Ben-Meir generally does not recommend multiple steroid injections,

but if he does, it is Dr. Ben-Meir's policy and practice not to administer more than three steroid

injections in a twelve-month period.  If a patient requests more than three injections in a twelve-

month time period, Dr. Ben-Meir refers the patient to an orthospine surgeon for further

evaluation.

94.   Dr. Ben-Meir typically uses the steroid Kenalog 40mg for pain injections.

95.   Even if three steroid injections were given over a twelve-month period, the low dose

- 15 -

and small number of injections spread out over twelve months will not cause weight gain.

96.   In addition, it is also Dr. Ben-Meir's policy to obtain permission from a patient's primary care physician before administering any injections if a patient presents with any health problems. Any follow-up phone calls from a primary care physician would also be documented in the patient's chart. According to a search and review of SSHC's EMR by Ms. Abraczinskas, Dr. Ben-Meir, and Dr. Visco, there were no conversations with a patient's primary care physician that too much steroid was being given to the patient.

### 11.    The "A Smith" Google Review

97.   Another review posted by "A Smith" on Google about Dr. Ben-Meir on or about October 5, 2018 (the "A Smith Google Review") states: "The office staff is fine but the doctor is not that good. He could not help me w my muscle pain." A copy of the A Smith Google Review is attached as **Exhibit M**.

98.   According to a search and review of SSHC's EMR by Ms. Abraczinskas, there are three patients at SSHC with first initial "A" and last name "Smith." The clinical information in the medical records for these patients indicates that these patients were either not treated for muscle pain or were not a patient of Dr. Ben-Meir.

### 12.    The "Ali Wilson" Google Review

99.   Another review posted by "Ali Wilson" on Google about Dr. Ben-Meir on or about October 6, 2018 (the "Ali Wilson Google Review") states:

> Thr [sic] Doctor was not helpful. I transferred my care from LA
> and I was disappointed with Dr Ben Meir. He was in a rush and did
> not explain the plan. The physical exam was a 2 min thing.
> The staff is excellent and very helpful
> It was easy to make an appointment

A copy of the Ali Wilson Google Review is attached as **Exhibit N**.

100. According to a search and review of SSHC's EMR by Ms. Abraczinskas, "Ali

Wilson" is not currently a patient of SSHC and has never been a patient of SSHC.

101. According to the search and review the EMR, there were no patients of SSHC who transferred care from Los Angeles.

102. In addition, the statement that Dr. Ben-Meir only spent two minutes on the physical exam is verifiably untrue. According to a search and review of SSHC's EMR by Ms. Abraczinskas, Dr. Ben-Meir, and Dr. Visco, all of Dr. Ben-Meir's office visits in the six months prior to the September 27, 2018 review were billed as either a Level II, Level III or Level IV office visit. These are Evaluation and Management codings for billing medical office visits, ranging from lower to higher levels of care. For a Level II office visit, the physician must spend at least ten minutes face-to-face with the patient, or perform expanded problem focused history, expanded problem focused exam, and straightforward medical decision-making. For a Level III office visit, the physician must spend thirty-minutes face-to-face with the patient, or perform a detailed history, detailed exam and low complexity medical decision-making. For a Level IV office visit, if coding based on time, the physician must spend forty-five minutes face-to-face with the patient, or perform a comprehensive history, a comprehensive exam, and moderate complexity medical decision-making. Thus, it is an impossibility that Dr. Ben-Meir would have spent only two minutes with this purported patient.

### 13.    The "A George" Google Review

103.  Another review posted by "A George" on Google about Dr. Ben-Meir on or about October 6, 2018 (the "A George Google Review") states:

> Dr Ben Meir spent no time with me and the time was in the room he made me feel so uncomfortable. I am a young female and I felt strange the way he was looking at me. very unprofessional. The office staff was nice

A copy of the A George Google Review is attached as **Exhibit O**.

104.  According to a search and review of SSHC's EMR by Ms. Abraczinskas, "A George"

- 17 -

is not currently a patient of SSHC and has never been a patient of SSHC.

105. In addition, when a physician at SSHC sees a female patient, it is standard operating procedure of SSHC to always have a female medical assistant or other female medical professional in the treatment room for the length of every appointment in order to ensure patient care and safety as well as a professional environment.

106. The search and review of the EMR of the past six months indicates that Dr. Ben-Meir has never had any complaints against him from any female patients.

**14.    The "A George" Healthgrades.com Review**

107. A second review by an "A George" was posted on Healthgrades.com also on or about October 6, 2018 ("the A George Healthgrades Review") and similar states as the A George Google Review:

> spends no time with patients and he is unprofessional with young
> pretty patients. stay away from him

A copy of the A George Healthgrades Review is attached as **Exhibit P**.

108. According to a search and review of SSHC's EMR by Ms. Abraczinskas, "A George" is not currently a patient of SSHC and has never been a patient of SSHC.

109. In addition, when a physician at SSHC sees a female patient, it is standard operating procedure of SSHC to always have a female medical assistant or other female medical professional in the treatment room for the length of every appointment in order to ensure patient care and safety as well as a professional environment.

110. The search and review of the EMR of the past six months indicates that Dr. Ben-Meir has never had any complaints against him from any female patients.

**15. The "John Jordan" Google Review**

111. Another review posted by "John Jordan" on Google about Dr. Ben-Meir on or about October 7, 2018 (the "John Jordan Google Review") states:

- 18 -

> Below average doctor. Always in a rush. I suffer with hip pain and
> after he injected me, he said I need surgey [sic]
> The staff is good and kind.

A copy of the John Jordan Google Review is attached as **Exhibit Q**.

112. According to a search and review of SSHC's EMR by Ms. Abraczinskas, "John Jordan" is not currently a patient of the practice and has never been a patient of the practice.

113. In addition, is the standard practice and policy of Dr. Ben-Meir to refer a patient for a surgical consult if the patient fails conservative treatment and interventional procedures. The indication for surgery is then at the discretion of the surgeon. Dr. Ben-Meir does not make these recommendations.

### 16. The "Ana Matthews" Google Review

114. Another review posted by "Ana Matthews" on Google on or about October 8, 2018 (the "Ana Matthews Google Review") states

> I pulled my back at the gym and got an appointment with Dr Ben
> Meir. The staff was great. The doctor made a move on me, very
> flirtatious.
> He was not professional and asked me if I have a boyfriend. I am
> not going back to see him.

A copy of the Ana Matthews Google Review is attached as **Exhibit R**.

115. According to a search and review of SSHC's EMR by Ms. Abraczinskas, "Ana Mathews" is not currently a patient of SSHC and has never been a patient of SSHC.

116. In addition, when a physician at SSHC sees a female patient, it is standard operating procedure of SSHC to always have a female medical assistant or other female medical professional in the treatment room for the length of every appointment in order to ensure patient care and safety as well as a professional environment.

117. The search and review of the EMR of the past six months indicates that Dr. Ben-Meir has never had any complaints against him from any female patients.

BE:9972426.2/VIS043-265007

118.  Dr. Ben-Meir and SSHC have clearly demonstrated that each and every negative review posted about Dr. Ben-Meir on Google, Healthgrades.com and Vitals.com between on or about September 26, 2018 and October 8, 2018.

119.  Prospective and current patients of SSHC and Dr. Ben-Meir who read these reviews do not know that they are false.

120.  Nothing is more important to an individual than his or her health and the health of loved ones.

121.  The public therefore relies heavily on patient internet reviews of physicians when choosing their own doctors.

122.  Defendants' patently false and fictitious negative reviews have had adverse effects on the Plaintiffs' professional reputations and on the viability of their medical practice.  In particular, Plaintiff's staff has received comments from both prospective and existing patients that the Internet posting on Google have dissuaded them from using for the first time or continuing to use Plaintiff's service.

123.  New Jersey law requires doctors to identify themselves by their name. A trademark is a source of goods or services, which is composed of words. Thus, in New Jersey, a doctor's name is his or her trademark.

124.  Defendants were never authorized by the Plaintiffs to use Plaintiffs' trademarks.

125.  The Plaintiffs' trademarks, which are words which associate the Plaintiff as a source of goods or services to the public, is both the practice name (SSHC) as well as each and every doctor's name employed by the practice.

## COUNT I
## (TORTIOUS INTERFERENCE WITH CONTRACT)

126.  Plaintiffs incorporate herein by this reference each and every allegation contained in each paragraph above.

BE:9972426.2/VIS043-265007

127. Plaintiffs are, and at all relevant times have been, the owners and operators of a SSHC, a medical practice.

128. Among the rights granted to each medical practice under federal law and the laws of the State of New Jersey is the right to contract with patients for medical services free from unlawful interference.

129. Plaintiffs are informed and believe that Defendant Dr. Burducea and at least one additional unidentified defendant has used, and continues to use, an online media distribution system to distribute to the public, and/or make available for distribution to others, certain false information. Exhibits A – E and G - R identifies the injurious content that Defendant Dr. Burducea and at least one additional unidentified defendant has distributed to the public, and/or made available for distribution to others via the Internet site. In doing so, each said Defendant has injured Plaintiffs' ability to contract with others. Said Defendant's actions constitute Tortious Interference with Contract of the Plaintiffs. Plaintiffs are informed and believe that the foregoing acts have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiffs.

130. As a result of Defendant Burducea's and at least one additional unidentified defendant's unlawful Internet postings, Plaintiffs are entitled to actual damages pursuant to against Defendant Dr. Alex Burducea and at least one additional unidentified defendant. Plaintiffs further are entitled to their attorneys' fees and costs pursuant to N.J.S.A. 56:4-1 et. seq.

131. The conduct of Defendant Dr. Burducea and at least one additional unidentified defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. Plaintiffs have no adequate remedy at law. Plaintiffs are entitled to injunctive relief prohibiting

- 21 -

Defendant Dr. Burducea and at least one additional unidentified defendant from further harming

Plaintiffs' rights, and ordering that Defendant Dr. Burducea and at least one additional

unidentified defendant to destroy all copies of the unlawful content.

## COUNT II
## (INTERFERENCE WITH CONTACT RELATIONSHIP)

132.  Plaintiffs incorporate herein by this reference each and every allegation contained in

each paragraph above.

133.  Defendant Dr. Burducea and at least one additional unidentified defendant

intentionally and improperly interferes with the performance of at least one contract between

Plaintiff and a patient or potential patient by posting fraudulent content on medical sites and

thereby inducing or otherwise causing said patient or potential patient not to perform at least one

contract for medical services.

134.  As a result of said posting fraudulent content on medical sites by Defendant Dr. Alex

Burducea and at least one additional unidentified defendant, the Plaintiff has suffered pecuniary

losses resulting from said patient or potential patient failure to perform at least one contract with

the Plaintiff.

## COUNT III
## (INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

135.  Plaintiffs incorporate herein by this reference each and every allegation contained in

each paragraph above.

136.  Dr. Burducea and at least one additional unidentified defendant has intentionally and

improperly interfered with Plaintiff's prospective contractual relation by posting fraudulent

Internet content and which has resulted in pecuniary harm resulting from loss of the benefits of

the relation with at least one patient or potential patient.

137.  Said fraudulent Internet postings resulted in inducing or otherwise causing at least one

BE:9972426.2/VIS043-265007

patient or potential patient not to enter into or continue the prospective relation with the Plaintiff or preventing at least one patient or potential patient acquiring or continuing the prospective relations with the Plaintiff.

## COUNT IV
## (NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

138. Plaintiffs incorporate herein by this reference each and every allegation contained in each paragraph above.

139. Dr. Burducea's and at least one additional unidentified defendant's fraudulent posting caused Plaintiff pecuniary harm as a result.

140. Defendant Dr. Alex Burducea's and at least one additional unidentified defendant's fraudulent posting was negligent causing at least one patient or potential patient not to perform a contract with the Plaintiff or interfering with the at least one patient or potential patient's performance of his or her contract or making the performance by Plaintiff more expensive or burdensome, or interfering with the Plaintiff's acquiring a contractual relation with a at least one patient or potential patient.

## COUNT V
## (COMMON LAW UNFAIR COMPETITION)

141. Plaintiffs incorporate herein by this reference each and every allegation contained in each paragraph above.

142. Dr. Burducea's and at least one additional unidentified defendant's fraudulent posting resulted in commercial detriment of the Plaintiff because said posting included material false-representations that have likely affected the conduct of at least one patient or potential patient; and there is a reasonable basis for believing that the representation has caused or is likely to cause a diversion of trade from the Plaintiff and / or harmed to the Plaintiff's reputation or goodwill

BE:9972426.2/VIS043-265007

## COUNT VI
## (STATUTORY UNFAIR COMPETITION)

143. Plaintiffs incorporate herein by this reference each and every allegation contained in each paragraph above.

144. Trade Secrets Act N.J.S.A.56:15-1, which prohibits individuals from accessing, misappropriating and deleting trade secret information including customer or in this case patient lists. More particularly, "Trade secret" means information, held by one or more people, without regard to form, including a formula, pattern, business data compilation, program, device, method, technique, design, diagram, drawing, invention, plan, procedure, prototype or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

145. Dr. Burducea and at least one additional unidentified defendant willfully and maliciously misappropriated and used patient list information in fraudulent Internet postings, resulting in commercial detriment of the Plaintiff because said posting included material false representations that have likely affected the conduct of at least one patient or potential patient; and there is a reasonable basis for believing that the representation has caused or is likely to cause a diversion of trade from the Plaintiff and / or harmed to the Plaintiff's reputation or goodwill.

## COUNT VII
## (TRADEMARK LIBEL)

146. Plaintiffs incorporate herein by this reference each and every allegation contained in each paragraph above.

147. For emphasis, paragraph 123 herein states that New Jersey law requires doctors to identify themselves by their name. A trademark is a source of goods or services, which is

- 24 -

RE 0072426 2/11/5043-265007

composed of words. Thus, in New Jersey, a doctor's name is his or her trademark.

148.  Defendant Dr. Burducea's and at least one additional unidentified defendant's fraudulent Internet posting were publication of injurious falsehoods per the rules on liability for the publication of an injurious falsehood as stated in § 623A Restatement (Second) of Torts and were thus publication of matter disparaging as to the quality of Plaintiff's services and are likely to result in pecuniary loss to the Plaintiff through the conduct of at least one patient or potential patient in respect to the selection and / or continued use of Plaintiffs' services.

## COUNT VIII
## (TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN)

149.  Plaintiffs incorporate herein by this reference each and every allegation contained in each paragraph above.

150.  For emphasis, paragraph 123 herein states that New Jersey law requires doctors to identify themselves b their name. A trademark is a source of goods or services, which is composed of words. Thus, in New Jersey, a doctor's name is his or her trademark.

151.  Defendant Dr. Alex Burducea's and at least one additional unidentified defendant's fraudulent Internet posting which included the unauthorized use of the Plaintiff's trademark for the benefit of competing or related goods and services.

152.  Said unauthorized use of the Plaintiff's trademark has caused confusion in at least one potential and / or existing patient, who were the average consumers for the Plaintiff's mark.

**WHEREFORE**, Plaintiffs pray for judgment against each Defendant as follows:

For an injunction providing:

1.  "Defendant shall be and hereby is enjoined from directly or indirectly interfering with Plaintiffs' rights under federal or New Jersey state law in conduct of providing medical services including without limitation by using the Internet or any online media distribution system to distribute unlawful content. Defendants shall immediately remove their content from the

Internet, including but not limited to Google.com, Healthgrades.com, and Vitals.com shall refrain from posting new and additional content."

2.      For actual damages for each unlawful posting in an amount to be determined at trial.

3.      For Plaintiffs' costs in this action.

4.      For Plaintiffs' reasonable attorneys' fees incurred herein.

5.      For such other and further relief as the Court may deem just and proper.


Respectfully submitted,


Keith J. Roberts, Esq.
Jonathan D. Bick, Esq.
**Brach Eichler L.L.C.**
101 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: 973-228-5700
Facsimile: 973-228-7852
*Attorneys for Plaintiffs  The Spine and Sports*
*Health  Center and Ron Ben-Meir, D.O.*

## JURY DEMAND

### (Fed. R. Civ. P. 38)

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a

trial by jury of all triable issues of fact.

**BRACH EICHLER, L.L.C.**
Attorney for Plaintiffs The Spine and Sports Health
Center and Ron Ben-Meir, D.O.

_____
KEITH J. ROBERTS, ESQ.

Dated:  October 12, 2018

## DESIGNATION OF TRIAL COUNSEL

Keith J. Roberts, Esq., is hereby designated as trial counsel for the Plaintiffs in the within

matter.

**BRACH EICHLER, L.L.C.**
Attorney for Plaintiffs The Spine and Sports Health
Center and Ron Ben-Meir, D.O.

_____
KEITH J. ROBERTS, ESQ.

Dated:  October 12, 2018

BE:0072426.2/VIS043-265007

## CERTIFICATION FOR VERIFICATION

I am the Medical Director of Plaintiff The Spine and Sports Health Center in the within

matter and as such am familiar with the circumstances which comprise the within litigation.

I have read the Verified Complaint to which this Certification for Verification is attached.

The facts stated therein are true based on my personal knowledge, except those facts that are

alleged as being true on information and belief.

I certify that the foregoing statements made by me are true. I am aware that if any of the

foregoing statements made by me is willfully false, I may be subject to punishment.

Alex Visco, M.D.

DATED: Fri, Oct 12, 2018

- 28 -

## **CERTIFICATION OF GENUINENESS**

I, JONATHAN BICK, ESQ., hereby certify that ALEX VISCO, acknowledged the

genuineness of the above signature and that an original of this document will be filed if requested

by the Court or a party.

_____
JONATHAN BICK, ESQ.

DATED:  October 12, 2018

# What People Say About Dr. Ron Ben-Meir, DO

Recent      Highest      Lowest

↰ Reply

I saw this doctor twice and both times he was in a rush. Did not explain anything to me. He was in his cell phone nonstop. He wanted to inject my back and I do not trust him. I heard the paralyzed a patient a couple of years ago. Do not go to see him

Was this helpful? 🖒  🖓  ❷

John Smith in Jersey city – Sep 26, 2018

E

# Ron Ben-Meir, D.O.

720 Monroe St Suite C208, Hoboken, NJ

   

## 3.1 ★★★★ ☆ ☆ 23 reviews

Sort by: Newest ▾



**Jennifer Jackson**
1 review

★ ☆ ☆ ☆ ☆ a week ago

Dr Ben-Meir did 1 injection and I will not go back for the 2nd. I had horrible pain for weeks and could not walk well at all. I called the office to talk to him and he did not call me back in 1 week. I felt very u safe under his care. This practice is not good. Dr Ben-Meir is not ethically correct and mistreated me. I am an old lady in pain. I should have not suffered this way. I would NOT recommend him to anyone !!!

 Like

# Ron Ben-Meir, D.O.

720 Monroe St Suite C208, Hoboken, NJ



3.1 ★★★★ ★ ★ 23 reviews

Sort by: Newest ▾

**J Cortes**
2 reviews

★ ★ ★ ★ ★ a week ago · 📷

My KNEE got INFECTED after he injected it and I had to go to the ER. I was on antibiocots for 2 weeks. HE NEVER CALELED TO CHEKC ON ME AFTER THE INJECTION. DR Ben-Meir had a very dirty technique and used non sterile gloves. I am not going back to him. He caused me so much agony and pain after a simple injection.

 Like

# Dr. Jose F. Colon, MD

80 Maiden Ln, New York, NY

1.8 ★★★★★ 19 reviews

Sort by: Newest ▾



**J Cortes**
2 reviews

★★★★★ a week ago · 

I had a serious work injury and saw Dr Colon first. He recommend Therapia at his place on Maiden LN in the city. It was a waste of time, cold compresses and the vibrating unit. Zero improvement. This therapist Milton did not do anything. Seats down every time I was there and does NOTHING, no Therapia. The bill was so high and the billed for things that were never done. I am upset. I am not going back ever again. Colon wasted my time and he wanted me to do surgey for no reason. Why? So he make more money.

I improved with good therapy somewhere else and I am back to work full time.



E

# Ron Ben-Meir, D.O.



720 Monroe St Suite C208, Hoboken, NJ

3.4 ★★★★ ★ 17 reviews

Sort by: Most relevant ▾

 Like

**A Wilson**
1 review

★ ★ ★ 4 days ago · 

Dr Ben Meir made me very uncomfortable since he examined me in the room WITHOUT a nurse. This was below a standard of care exam.  since I am a retired nurse.

I can tell HE is not trustworthy.

He should not examine female patients without a nurse in the room.  I am very upset with his bedside manners.

 Like

**Jack Smith**
1 review

★ ★ ★ ★ ★ a week ago

Dr Ben-Meir has bad manners. Did not explain the mri results to me and spent 3 minutes with me. I am not going back.  Terrible care

He was in his cell phone nonstop

 Like



F

# The Spine & Sports Health Center

764 Broadway, Bayonne, NJ

## 5.0 ★★★★★ 55 reviews

✎ Edit your review

Sort by: Newest ▾



**Jack Smith**

★★★★★ 2 weeks ago

C

# ★ ★ ★ ★ ★ Below average pain doctor

Self-verified patient of Dr. Ron S Ben-Meir - Posted on September 28th, 2018

This was not a good experiment. This doctor spent 6-7 minutes with me and billed me so much for nothing. I got a crazy bill from his office for nothing. This was very incorrect of him

| | | | |
|---|---|---|---|
| Easy Appointment | ★★ ★ ★ ★ | Promptness | ★★ ★ ★ ★ |
| Friendly Staff | ★★ ★ ★ ★ | Accurate Diagnosis | ★★ ★ ★ ★ |
| Bedside Manner | ★ ★ ★ ★ ★ | Spends Time with Me | ★ ★ ★ ★ ★ |
| Appropriate Follow-up | ★ ★ ★ ★ ★ | | |



★ ★ ★ ★ ★ Long wait

Self-verified patient of Dr. Ron S Ben-Meir - Posted on September 30th, 2018

I had to wait for 2 hours for him. Very disappointing experience. The wait was not worth the care he provided

| | | | |
|---|---|---|---|
| Wait time | 60 minutes | Easy Appointment | ★ ★ ★ ★ ★ |
| Promptness | ★ ★ ★ ★ ★ | Friendly Staff | ★ ★ ★ ★ ★ |
| Accurate Diagnosis | ★ ★ ★ ★ ★ | Bedside Manner | ★ ★ ★ ★ ★ |
| Spends Time with Me | ★ ★ ★ ★ ★ | Appropriate Follow-up | ★ ★ ★ ★ ★ |



# Ron Ben-Meir, D.O.

720 Monroe St Suite C208, Hoboken, NJ



3.1 ★★★★☆ 23 reviews

Sort by: Newest ▾



**A Rodriguez**
1 review

★☆☆☆☆ a week ago

Dr Ben Meir treated me with injections that did not help at all. There was no improvement at all and he still kept on insisting to inject more. My sugar got very high and I gained so much weight. My family doctor called him and told him to stop injecting me with so much steroids

He treated me like a "PINCUSHION"
I would not recommend him to anyone

 Like

# Ron Ben-Meir, D.O.

720 Monroe St Suite C208, Hoboken, NJ



3.1 ★★★★ ☆ 23 reviews

Sort by: Newest ▼



**A Wilson**
1 review

★ ★ ★ ★ ★ a week ago · 

Dr Ben Meir made me very uncomfortable since he examined me in the room WITHOUT a nurse. This was below a standard of care exam. since I am a retired nurse.

I can tell HE is not trustworthy.

He should not examine female patients without a nurse in the room. I am very upset with his bedside manners.

 Like

# Ron Ben-Meir, D.O.

720 Monroe St Suite C206, Hoboken, NJ



3.1 ★ ★ ★ ★ ★   23 reviews

Sort by: Newest ▾



**George Storm**
1 review

★ ☆ ☆ ☆ ☆  6 days ago

Dr Ben Meir staff lost my mri and emg results. They blamed me for it. The doctor was rude and very short and unprofessional with me. I wasted weeks to go back to the mri facility to get the results and saw the doctor again. He was useless.

He said he can not help me and he does not treat fibromyalgia after I wasted 2 months to see him, he was no help. What kind of doctor is this?

Disappointing experience

 Like

# Ron Ben-Meir, D.O.

720 Monroe St Suite C208, Hoboken, NJ



3.1 ★★★★ ★ ★ 23 reviews

Sort by: Newest ▾



**H Cohen**
1 review

★ ★ ★ ★ ★ 4 days ago

I suffer with back and knee pain and I was treated by him for a whole. I had no results and he wanted to do more and more injections which were not helping. He injected so much steroid that my family doctor got upset. I gained weight and my sugar was high. It was not a good experience. Very pushy doctor

 Like

# Ron Ben-Meir, D.O.

720 Monroe St Suite C208, Hoboken, NJ

3.1 ★★★ ★ ★  23 reviews

Sort by: Newest ▾

Write a review

**A** **A Smith**
1 review

★ ★ ★ ★ ★  2 days ago

The office staff is fine but the doctor is not that good. He could not help me w my muscle pain

 Like

# Ron Ben-Meir, D.O.

720 Monroe St Suite C208, Hoboken, NJ



3.1 ★★★★☆ 23 reviews

Sort by: Newest ▼



**Ali Wilson**
1 review

★★ 2 days ago

Thr Doctor was not helpful. I transferred my care from LA and i was disappointed with Dr Ben Meir. He was in a rush and did not explain the plan. The physical exam was a 2 min thing.

The staff is excellent and very helpful

It was easy to make an appointment

 Like

# Ron Ben-Meir, D.O.

720 Monroe St Suite C208, Hoboken, NJ



3.1 ★★★★★ 23 reviews

Sort by: Newest ▼

 **A George**

1 review

★ ★ ★ ★ ★ a day ago

Dr Ben Meir spent no time with me and the time was in the room he made me feel so uncomfortable. I am a young female and I felt strange the way he was looking at me. very unprofessional. The office staff was nice

 Like

# What People Say About Dr. Ron Ben-Meir, DO

**Recent**   Highest   Lowest

spends no time with patients and he is unprofessional with young pretty patients. stay away from him

↰ Reply   ⋯

Was this helpful? 👍 🗨

A George in NJ – Oct 06, 2018

C

# Ron Ben-Meir, D.O.
720 Monroe St Suite C208, Hoboken, NJ



3.1 ★★★★ 23 reviews

Sort by: Newest ▼



**John Jordan**
1 review

★ 15 hours ago

Below average doctor. Always in a rush. I suffer with hip pain and after he injected me, he said I need surgey

The staff is good and kind.

 Like

F

# Ron Ben-Meir, D.O.

720 Monroe St Suite C208, Hoboken, NJ



3.1 ★★★★ ★ ★ 23 reviews

Sort by: Newest ▾



**A** **Ana Mathews**
1 review

★ ★ ★ ★ 6 hours ago

i pulled my back at the gym and got an appointment with Dr Ben Meir. The staff was great. The doctor made a move on me. very flirtatious.

He was not professional and asked me if I have a boyfriend. I am not going back to see him.

 Like